UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| LAVANCE TURNAGE, | ) | CASE NO. 1:05 CV 2006 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| REGINALD A. WILKINSON, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

On August 16, 2005, plaintiff pro se Lavance Turnage filed the above-captioned action under 42 U.S.C. § 1983 against Ohio Department of Rehabilitation and Correction ("ODRC") Director Reginald Wilkinson, ODRC Deputy of Institutions Terry Collins, Mansfield Correctional Institution ("MANCI") Warden Margaret Bradshaw, MANCI Deputy Warden Sally Glover, MANCI Institutional Inspector Sharon Berry, MANCI Institutional Investigator Joe Masi, MANCI Institutional Investigator David Blake, MANCI Corrections Officer Sergeant Don Zinn, MANCI Corrections Officer Sergeant Soltes, and MANCI Unit Manager Jesse Dunn. In the complaint, plaintiff alleges legal materials were confiscated from his cell during two searches. He seeks $ 300,000.00 in compensatory damages and $ 500,000.00 in punitive damages.

*Background*

Mr. Turnage alleges his cell was searched while he was at breakfast on April 28, 2004. He contends the search for contraband was ordered by Lieutenant Blake, and was conducted by Corrections Officer Don Zinn. He claims that during the search, a letter was confiscated because it made reference to "Strollo," his co-defendant in a federal racketeering prosecution. He believes the officers were looking for information to assist in the prosecution of his co-defendant. Mr. Turnage alleges several legal motions were attached to the letter and, as a result, were also confiscated. He indicates he asked to have the contraband materials reviewed in the presence of the Warden and an attorney but the request was denied.

A second search occurred on August 18, 2004. Mr. Turnage contends that Officers Zinn and Soltes entered his cell at 7:30 a.m. and asked his cellmate where Mr. Turnage kept his personal property. He claims the officers proceeded to search his footlocker, cabinet and drawers. He alleges Officer Zinn once again confiscated legal materials and began to read through them. At that point, Mr. Turnage returned to the cell and asked Officer Zinn to stop reading his documents. He contends Officer Zinn refused and began to throw his materials on the floor and all around the cell. Mr. Turnage alleges that Unit Manager Jesse Dunn, Captain Hale, Deputy Warden Sally Glover, and Mrs. Wainwright came to the pod to inspect. He indicates that when they observed the condition of his cell, he informed them of Officer Zinn's previous search. He asserts claims under the First, Fourth, Eighth, and Fourteenth Amendments.

*Exhaustion of Administrative Remedies*

A prisoner must allege and show that he has exhausted all available administrative remedies before filing a civil rights action in federal court to challenge the conditions of his confinement. 42 U.S.C. §1997e; Wyatt v. Leonard, 193 F.3d 876, 878 (6th Cir. 1999); Brown v. Toombs, 139 F.3d 1102, 1104 (6th Cir. 1988), cert. denied, 525 U.S. 833 (1998). To establish that he exhausted his remedies prior to filing suit, the prisoner must plead his claims with specificity and show that he has exhausted his administrative remedies with respect to each allegation against each defendant by attaching to the complaint a copy of the applicable administrative dispositions or, in the absence of written documentation, describing with specificity the administrative proceedings and their outcomes. Knuckles-El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000). The prisoner must exhaust each specific claim against each defendant named in the complaint to satisfy the exhaustion requirement. See Curry v. Scott, 249 F.3d 493, 504-05 (6th Cir. 2001). Moreover, the prisoner must specifically grieve allegations of retaliation or conspiracy if he wishes to assert those claims against the defendants he names in his civil complaint. Garrison v. Walters, No. 00-1662, 2001 WL 1006271 (6th Cir. Aug. 24, 2001); Curry, 249 F.3d at 504-05. In the absence of such particularized averments concerning exhaustion, the action must be dismissed. Id.

Ohio Administrative Code § 5120-9-31 sets forth a three-step grievance procedure for administrative remedies for inmates housed in Ohio prisons. Under this section, an inmate initiates the grievance procedure by filing an Informal Complaint Resolution form with the prison official whose area of responsibility is most related to the grievance. OHIO ADMIN. CODE § 5120-9-31(J)(1). If the inmate is dissatisfied with the informal complaint response, or if there has been no response to the complaint, the inmate may file a Notification of Grievance form with the Institutional Inspector. OHIO ADMIN. CODE §

5120-9-31(J)(2). If this second step does not provide satisfactory results, the inmate may file an appeal with the office of the Chief Inspector. OHIO ADMIN. CODE § 5120-9-31(J)(3). The Chief Inspector's written response to the inmate's appeal is the final decision on the grievance. Grievances against the Warden must be filed directly to the Office of the Chief Inspector. OHIO ADMIN. CODE § 5120-9-31(L). The decision of the Chief Inspector or designee is final. OHIO ADMIN. CODE § 5120-9-31(L).

Mr. Turnage specifies that he is asserting each of his claims against each of the defendants.[1] To demonstrate exhaustion of administrative remedies for the claims associated with the April 28, 2004 search of his cell, Mr. Turnage attaches six grievance forms. He includes three Informal Complaint Resolution forms which contain allegations against Lieutenant Blake and Officer Zinn, and a Notification of Grievance form which mirrors these allegations. He also provides a copy of the Institutional Inspector's Disposition denying the grievance and the Decision of the Chief Inspector affirming the Institutional Inspector's ruling. Apart from Lieutenant Blake and Officer Zinn, no other defendants are mentioned in these grievance forms.

For his allegations pertaining to the search of his cell on August 18, 2004, Mr. Turnage attaches two Informal Complaint Resolution forms, two Notification of Grievance forms, a Disposition of Grievance, an Appeal to the Chief Inspector, and two Decisions of the Chief Inspector. The Informal

---

[1] He contends he is asserting three causes of action against each of the defendants. He does not specifically identify three causes of action in his complaint and it is difficult to determine which claims make up the three causes of action he intends to assert. He mentions only two searches in his complaint, and then lists five legal theories - retaliation, inappropriate supervision, cruel and unusual punishment, access to courts, and negligence - under which he believes he can recover damages for these actions. He also claims his First, Fourth, Eighth and Fourteenth Amendment rights were violated. None of these claims or allegations can easily be divided into three categories.

4

Complaint Resolution forms alleged that Officers Zinn and Soltes searched his cell and Officer Zinn confiscated legal materials. He also claimed Mr. Dunn, Captain Hale, and Ms. Glover came into the dorm to do an inspection and observed the condition of his cell. The Notification of Grievance form filed November 24, 2004 contains the same information as the Informal Complaint Resolution, but added his allegations that Mr. Massie, Mr. Blake, Officer Zinn and Officer Soltes conspired together to violate his rights, that he had been the subject of retaliation, that Captain Hale failed to follow administrative policies to insure the return of his property, and that the Warden, Investigator, Officer Zinn and Officer Soltes hindered his access to the courts. The Institutional Inspector responded to that Grievance on December 7, 2004. Mr. Turnage then appealed that Decision to the Chief Inspector. His Appeal, however, does not cover the allegations from the Grievance, but instead focuses on allegations against Institutional Inspector, Sharon Berry, for failing to conduct an investigation into his complaints. At the same time, he filed a Notification of Grievance form, presumably with the Chief Inspector, reiterating his allegations against Ms. Berry. That grievance was denied by the Chief Inspector on February 2, 2005. The Chief Inspector responded to Mr. Turnage's Appeal on March 22, 2004, also denying relief.

These grievance forms and the allegations in the complaint fail to demonstrate that Mr. Turnage exhausted his administrative remedies for each of his allegations against each of the defendants. While he may have exhausted his claims pertaining to the April 28, 2004 search against Officer Zinn, and Lieutenant Blake, he has not exhausted these claims with regard to any other defendant. Moreover, it is difficult to determine which claims pertaining to the August 18, 2004 search have been exhausted and against whom they have been exhausted. None of the claims are repeated through each level of the grievance process. Both Notification of Grievance forms contain allegations that were never presented

in an Informal Complaint Resolution.  The Notice of Appeal of the Grievance contains allegations completely different from those presented in the formal Notification of Grievance upon which it is based. In fact, the only claim pertaining to the August 2004 search that this court can determine has been exhausted is the one asserted against the Institutional Inspector for failing to conduct a thorough investigation.  The inmate bears the burden of establishing exhaustion of administrative remedies.  Brown, 139 F.3d at 1104.  Mr. Turnage has not satisfied that burden.

The United States Sixth Circuit Court of Appeals recently adopted a "total exhaustion" requirement for prisoner complaints which fall within the parameters of 42 U.S.C. §1997e.  See Bey v. Johnson, 407 F.3d 801 (6th Cir. 2005).  Under this rule, a complaint containing both exhausted and unexhausted claims must be dismissed in its entirety for failure to exhaust administrative remedies.  Bey, 407 F.3d at 806-07.  The district court no longer has the option of dismissing just the unexhausted claims and proceeding with the claims that have been submitted through the relevant grievance process.  Id.  A prisoner whose "mixed" complaint was dismissed may either wait until all of his claims have been exhausted to file his action, or file a new action which contains only the exhausted claims.  Id. at 808. Because Mr. Turnage has not demonstrated that he completed the grievance process for all of his claims against all of the defendants, the court is required by the rule of total exhaustion to dismiss the complaint in its entirety.

## *28 U.S.C. § 1915A*

Generally, if the exhaustion requirement has not been met, the federal case will be dismissed without prejudice.  Brown v. Toombs, 139 F.3d at 1104.  If, however, a complaint on its face clearly fails to state a claim upon which relief may be granted, the court may dismiss it on the merits without

requiring exhaustion. See 42 U.S.C. § 1997e(c)(2); Id. A district court is expressly authorized to dismiss any civil action filed by a prisoner seeking relief from a governmental entity, as soon as possible after docketing, if the court concludes that the complaint fails to state a claim upon which relief may be granted, or if the plaintiff seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A; Siller v. Dean, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000); see Hagans v. Lavine, 415 U.S. 528, 536-37 (1974) (citing numerous Supreme Court cases for the proposition that attenuated or unsubstantial claims divest the district court of jurisdiction); In re Bendectin Litig., 857 F.2d 290, 300 (6th Cir.1988) (recognizing that federal question jurisdiction is divested by unsubstantial claims). Although plaintiff has not demonstrated that he has complied with the mandates of §1997(e), his complaint fails to state a claim upon which relief may be granted, and is subject to dismissal without exhaustion pursuant to 28 U.S.C. § 1915A.

*Respondeat Superior*

As an initial matter, all of the claims against the defendants in their official capacities require dismissal. An official capacity damages action against a state officer is the equivalent of a damages liability litigation targeted against the state itself. Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989). The Eleventh Amendment is an absolute bar to the imposition of liability upon state agencies. Bouquett v. Clemmer, 626 F. Supp. 46, 48 (S.D. Ohio 1985). All of the defendants are employees of the State of Ohio. The Eleventh Amendment precludes recovery of damages from the defendants in their official capacity.

Moreover, to recover damages against a state official in his or her individual capacity, Mr. Turnage must establish that the defendant was personally involved in the activities which form the basis of

the alleged unconstitutional behavior. Rizzo v. Goode, 423 U.S. 362, 371 (1976); Mullins v. Hainesworth, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). The complaint simply contains no facts which reasonably associate ODRC Director Reginald Wilkinson, ODRC Deputy of Institutions Terry Collins, MANCI Warden Margaret Bradshaw, MANCI Deputy Warden Sally Glover, MANCI Institutional Inspector Sharon Berry, MANCI Institutional Investigator Joe Masi, MANCI Institutional Investigator David Blake, or MANCI Unit Manager Jesse Dunn to any of the claims set forth by plaintiff.

It is possible that Mr. Turnage named Mr. Wilkinson, Ms. Bradshaw, Ms. Glover, and Mr. Dunn as defendants simply because they employ or supervise other defendants named in the complaint. For an individual supervisor or employer to be found liable for the acts of an employee under §1983, the acts of the employee must have been in accordance with some official policy or custom or the supervisor must have encouraged the specific misconduct or in some way directly participated in it. See Monell v. Dept. of Social Services, 436 U.S. 658, 690-91 (1978); Hays v. Jefferson County, Ky., 668 F.2d 869 (6th Cir. 1982); Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). The complaint contains no suggestion of a custom or policy of these defendants which may have resulted in the deprivation of a federally protected right of the plaintiff. There is also no suggestion that any of these individuals encouraged, acquiesced in, or directly participated in the conduct described in the complaint. Mr. Turnage's claims against them must therefore be dismissed.

Furthermore, it is likely that Mr. Collins, Ms. Berry, Mr. Masi, and Mr. Blake have been included in this action solely because they responded to Mr. Turnage's letters and grievances in a manner that he found to be less than favorable. Responding to a grievance or otherwise participating in the grievance procedure is insufficient to trigger liability under 42 U.S.C. § 1983. Shehee v. Luttrell, 199

F.3d. 295, 300 (6th Cir. 1999); see Martin v. Harvey, No. 00-1439, 2001 WL 669983, at *2 (June 7, 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). As plaintiff has failed to allege facts to reasonably indicate these defendants engaged in any other activities which would arguably violate Mr. Turnage's constitutional rights, the claims against Mr. Collins, Ms. Berry, Mr. Masi and Mr. Blake are dismissed.

The only defendants against whom individual capacity claims for damages plausibly could be asserted would be Corrections Officers Zinn and Soltes. He asserts that these defendants are liable for "retaliation,...cruel and unusual punishment, as well as access to court along with negligence. He contends "this is a violation of the First Amendment along with Fourth Amendment and the Eighth Amendment along with the Fourteenth Amendment of the United States Constitution." (Compl. at 7.)

### *First Amendment - Access to the Courts*

To state a claim for denial of access to the courts, plaintiff must demonstrate he suffered actual injury as a result of the actions of the defendants. Lewis v. Casey, 518 U.S. 343, 351 (1996). The injury requirement is not satisfied by just any type of frustrated legal claim. Id. A prison official may be held liable for the deprivation of this First Amendment right only to the extent that his or her actions prevented the plaintiff from pursuing or caused the rejection of a specific non-frivolous direct appeal, habeas corpus application, or civil rights action. Id.; Hadix v. Johnson, 182 F.3d 400, 405 (6th Cir. 1999). "Impairment of any other litigating capacity is simply one of the incidental, and perfectly constitutional, consequences of conviction and incarceration."[2] Id. at 355.

---

[2] The Supreme Court stressed that the First Amendment does not guarantee prisoners the ability to transform themselves into "litigating engines capable of filing everything from shareholder
(continued...)

In support of the claim of actual injury, Mr. Turnage states he had "a 2255 Federal Writ of Habeas Corpus pending in court Case No. 1:02 CV 1967 as well as a 2254 Writ of Habeas Corpus pending in court Case No. 4:03 CV 1654."  (Compl. at 3-4.)  He further states "[t]he contraband evidence that was confiscated was the petitioner [sic] only copy of these Writ of Habeas Corpus both which [sic] actions required papers to be filed within a limited time after the date the papers was seize [sic]." (Compl. at 3.)  Later in the complaint, he identifies the documents taken as a writ of certiorari for his §2255 action, a "60(B) Motion" for his §2255 action, an Objection to Magistrate Judge Streepy's Report and Recommendation for the §2255 action[3], an Objection to Magistrate Judge Gallas's Report and Recommendation for the §2254 action, and "2 collateral attack Motion for my 2255 en banc motion to 6th Cir. Court of Appeal motion for certificate of Appealability for 2254." (Compl. at 7.)  He indicates that these documents were prepared by several different paralegals and law professors, and were his only irreplaceable copies.

There is no indication that conduct of any named defendants prevented Mr. Turnage from filing any of these documents.  Mr. Turnage filed his federal habeas corpus action pursuant to 28 U.S.C. § 2255, Case No. 1:02 CV 1967, on October 3, 2002.  He claims the defendants confiscated his Objections to the Report and Recommendation issued by the Magistrate Judge in this case.  United States

---

[2](...continued)
derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."  Lewis, 518 U.S. at 355.

[3]      Although Mr. Turnage identifies United States Magistrate Judge Jack B. Streepy as the judicial officer that issued the Report and Recommendation in this action, the case was in fact referred to Magistrate Judge David S. Perelman.

Magistrate Judge David S. Perelman issued that Report and Recommendation on April 3, 2003. He claims the above-mentioned documents were confiscated on April 28, 2004 and August 18, 2004, one year after the Report and Recommendation was issued. Clearly the actions of the defendants did not interfere with Mr. Turnage's ability to file his Objections.

Furthermore, United States District Judge Kathleen M. O'Malley adopted the Report and Recommendation on January 14, 2004, three months before the first search took place. Mr. Turnage would have had at least one year from the date of the January 14, 2004 Memorandum of Opinion and Order to file a Motion for Relief from Judgment under Federal Rule of Civil Procedure 60(B). He offers no explanation for how the alleged confiscation of his documents in April or August 2004 would have prevented him from filing a Motion due five months later in January 2005.

Mr. Turnage also contends his "collateral attack Motion for my 2255 en banc motion to 6th Cir. Court of Appeal" and his "writ of certiorari for his §2255 action" were taken in the April and August 2004 searches. He filed his Notice of Appeal of the denial of his federal habeas petition on January 23, 2004. The Sixth Circuit Court of Appeals issued its decision affirming the District Court on November 2, 2004. Assuming he had the forethought to prepare such a motion for an en banc hearing and a writ of certiorari three months before he learned the outcome of his appeal, he would have had several months to recreate these documents before he would have cause and opportunity to file them.

Mr. Turnage fails to show the defendants caused injury to his state habeas petition filed pursuant to 28 U.S.C. § 2254, Case No. 4:03 CV 1654, on August 6, 2003. He claims the defendants confiscated his Objections to Magistrate Judge Gallas's Report and Recommendation during their April and August 2004 searches of his cell. Magistrate Judge James S. Gallas issued his Report and

11

Recommendation on June 13, 2005, nearly one year after the alleged searches occurred. It is difficult to conceive that Mr. Turnage could have drafted Objections to a Report and Recommendation that had not yet been issued. He also claims the Officers took his "motion for certificate of appealability for 2254;" however, the § 2254 habeas action is still pending before United States District Judge John R. Adams. Even if he assumes that his petition will be dismissed at some point in the future, he still has time to draft a motion for a certificate of appealability. Mr. Turnage provides no allegation reasonably suggesting that the conduct of any of the named defendants caused the rejection of his claims or otherwise prevented him from pursuing his habeas actions. See Hadix, 182 F.3d at 405. He therefore fails to state a claim for the denial of access to the courts, and that cause of action must be dismissed.

*First Amendment - Retaliation*

Mr. Turnage next asserts, without explanation, that he is "alleging retaliation... ." (Compl. at 7.) To state a prima facie case for retaliation, plaintiff must establish: 1) he engaged in protected conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that a causal connection exists between the first two elements. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999). Mr. Turnage provides no information concerning this claim. He does not specify which of his activities, if any, he believes prompted the searches. In fact, he states that the searches were conducted to gain information for the criminal prosecution of his co-defendant. The court is left only with plaintiff's legal conclusion that retaliation occurred. Principles requiring generous construction of pro se pleadings are not without limits. See Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985). A complaint must contain either direct or inferential allegations respecting all the material

12

elements of some viable legal theory to satisfy federal notice pleading requirements.  See Schied v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988).  District courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments.  Beaudett, 775 F.2d at 1278.

### *Fourth Amendment - Illegal Searches*

In addition, Mr. Turnage claims, again without explanation, that the defendants violated his Fourth Amendment rights.  The court liberally construes this statement as a challenge to the searches of his cell.  The Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. Hudson v. Palmer, 468 U.S. 517, 525 (1984).  A prison "shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room." Lanza v. New York, 370 U.S. 139, 143-144 (1962). Wholly random searches of a prisoner's cell are not only essential to effective security of penal institutions, but do not run afoul of the Fourth Amendment.  Hudson, 468 U.S. at 528.

### *Eighth Amendment - Cruel and Unusual Punishment*

Mr. Turnage also asserts that the defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment.  Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  The Supreme Court in Wilson v. Seiter, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment.  A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred.  Id..  Seriousness is measured in response to "contemporary standards of decency."  Hudson v. McMilian, 503 U.S. 1, 8 (1992).  Routine discomforts of prison life do not suffice.

Id. Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. Id. at 9. Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. Id. A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Mr. Turnage's cell searches do not present a sufficiently serious deprivation which constitutes cruel and unusual punishment.

### *Fourteenth Amendment*

Finally, Mr. Turnage asserts a claim under the Fourteenth Amendment for the deprivation of personal property without due process of law. To prevail on a due process claim, the plaintiff must plead and prove either that he was deprived of property as a result of an established state procedure that itself violates due process rights; or by proving that the defendants deprived him of property pursuant to a random and unauthorized act and that available state remedies would not be adequate to redress the deprivation of property. Macene v. MJW, Inc., 951 F.2d 700, 706 (6th Cir 1991); see Vicory v. Walton, 721 F.2d 1062, 1064 (6th Cir. 1983). There is nothing in the amended complaint which suggests Mr. Turnage is challenging an established state procedure. Instead, it appears he is asserting he was deprived of his property due to unauthorized acts of Officers Zinn and Soltes.

To state a claim upon which relief may be granted, however, plaintiff must also plead and prove that state remedies for redressing the wrong are inadequate. Macene, 951 F.2d at 706; Vicory, 721 F.2d at 1064. A remedy is available in the Ohio Court of Claims. See Haynes v. Marshall, 887 F.2d 700, 704 (6th Cir.1989). Mr. Turnage has not set forth facts reasonably suggesting that the available state remedies were inadequate to redress the wrong.

*Conclusion*

Accordingly, this action is dismissed pursuant to 28 U.S.C. § 1915A. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[4]

IT IS SO ORDERED.

                                                 */s/Dan Aarn Polster    10/11/05*
                                                 DAN AARON POLSTER
                                                 UNITED STATES DISTRICT JUDGE

---

[4] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.